# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARIANNY CELESTE LOPEZ; ABIGAIL RATCHFORD; ANDRA CHERI MORELAND a/k/a ANA CHERI; CHANTEL ZALES; DANIELLE RUIZ; JAIME EDMONDSON-LONGORIA; JAMILLETTE GAXIOLA; INA SCHNITZER a/k/a JORDAN CARVER; JULIANNE KLAREN; LUCY PINDER; TIFFANY GRAY; ASHLEY HOBBS; AMANDA CERNY; BRENDA GEIGER; DENISE MILANI A/K/A DENISE TRLICA; EMMA GLOVER A/K/A EMMA CLEARY; HILLARY FISHER VINSON A/K/A HILLARY HEPNER; IESHA MARIE CRESPO; JACLYN SWEDBERG; JAMIE MIDDLETON D/B/A JAMIE EASON; JESSICA 'JESSA' HINTON; JESSICA BURCIAGA; JOANNA KRUPA; KRYSTAL FORSCUTT HIPWELL; LINA POSADA; LYNA PEREZ; MELANIE IGLESIAS; ROSA ACOSTA; ROSIE WICKS A/K/A ROSIE JONES; SHELBY CHESNES; and SARAH STAGE, | Civil Action No.: |
| *Plaintiffs*, | **COMPLAINT** |
| v. | **(Jury Trial Demanded)** |
| ORANGE LANTERN, INC. | |
| *Defendant.* | |

Plaintiffs ABIGAIL RATCHFORD; ANDRA CHERI MORELAND a/k/a ANA CHERI;

ARIANNY CELESTE LOPEZ; CHANTEL ZALES; DANIELLE RUIZ; JAIME

EDMONDSON-LONGORIA; JAMILLETTE GAXIOLA; INA SCHNITZER a/k/a JORDAN

CARVER; JULIANNE KLAREN; LUCY PINDER; TIFFANY TOTH GRAY; ASHLEY

HOBBS; AMANDA CERNY; BRENDA GEIGER; DENISE MILANI A/K/A DENISE

TRLICA; EMMA GLOVER A/K/A EMMA CLEARY; HILLARY FISHER VINSON A/K/A

HILLARY HEPNER; IESHA MARIE CRESPO; JACLYN SWEDBERG; JAMIE

MIDDLETON D/B/A JAMIE EASON; JESSICA 'JESSA' HINTON; JESSICA BURCIAGA;

JOANNA KRUPA; KRYSTAL FORSCUTT HIPWELL; LINA POSADA; LYNA PEREZ;

- 1 -

MELANIE IGLESIAS; ROSA ACOSTA; ROSIE WICKS A/K/A ROSIE JONES; SHELBY
CHESNES; and SARAH STAGE (collectively, "Plaintiffs"), by and through their undersigned
counsel, as and for their Complaint ("Complaint") against defendant ORANGE LANTERN,
INC. d/b/a MAGIC LANTERN ("Orange Lantern" or "Defendant"), respectfully allege as
follows:

## BACKGROUND

1.     This is an action for damages, injunctive relief, and attorneys' fees relating to
Defendant's misappropriation and unauthorized publication and use in advertising of images of
Plaintiffs, each of whom are well-known professional models, to promote their strip club, Magic
Lantern located in Palmer, Massachusetts ("Magic Lantern" or the "Club").

2.     As detailed below, Defendant's misappropriation and unauthorized use of
Plaintiffs' images, photos and likenesses (collectively, "Images") to promote Magic Lantern
constitutes violation of each Plaintiff's right of publicity under the laws of each Plaintiff's
domicile.[1]

3.     In addition to the actual damages set forth below, Plaintiffs likewise seek all
recoverable attorneys' fees under, *inter alia*, California Civil Code § 3344.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because
there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.

5.     As set forth immediately below, Plaintiffs are and at all times relevant to this

---

[1] Plaintiffs previously asserted, *inter alia*, misappropriation/right of publicity claims against
Defendant under Massachusetts's right of publicity statute, M.G.L.A. 214 § 3A, *Ratchford, et al.
v. Orange Lantern, Inc., et al.*, 19-cv-30092-MGM. This Court dismissed those claims on the
grounds that, as non-residents, Plaintiffs could not avail themselves of the protection of that
statute. This Complaint followed.

action have been professional models who reside throughout the United States.

6.      According to publicly available records, defendant ORANGE LANTERN, INC. is a corporation formed under the laws of the state of Massachusetts, with its principal place of business located at Route 20 Boston Post Road, Palmer, Massachusetts 01069.  ORANGE LANTERN, INC. operates Magic Lantern, which is located at 399 Wilbraham Street, Palmer, Massachusetts 01069.

7.      Venue is proper in the United States District Court for the District of Massachusetts because Palmer, Massachusetts is Orange Lantern's principal place of business.

8.      Primarily and substantially the alleged causes of action arose and accrued in Palmer, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Palmer, Massachusetts.

## **PARTIES**

### *Plaintiffs*

9.      Plaintiff Arianny Celeste Lopez ("Lopez") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Andra Cheri Moreland a/k/a Ana Cheri ("Moreland") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff Chantel Zales ("Zales") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Danielle Ruiz ("Ruiz") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Jaime Edmondson-Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

15.     Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a resident of Clark County, Nevada.

16.     Plaintiff Ina Schnitzer a/k/a Jordan Carver ("Schnitzer") is a well-known professional model, and a resident of Cologne, Germany.

17.     Plaintiff Julianne Klaren ("Klaren") is a well-known professional model, and a resident of Riverside County, California.

18.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, Hampshire, England.

19.     Plaintiff Tiffany Gray ("Gray") is a well-known professional model, and a resident of Orange County, California.

20.     Plaintiff Ashley Hobbs ("Hobbs") is a well-known professional model, and a resident of Honolulu County, Hawaii.

21.     Plaintiff Amanda Cerny ("Cerny") is a well-known professional model, and a resident of Los Angeles County, California.

22.     Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

23.     Plaintiff Denise Milani a/k/a Denise Trlica ("Milani") is a well-known professional model, and a resident of Los Angeles County, California.

24.     Plaintiff Emma Glover a/k/a Emma Cleary ("Glover") is a well-known professional model, and a resident of Essex, United Kingdom.

25.     Plaintiff Hillary Fisher Vinson a/k/a Hillary Hepner ("Hepner") is a well-known

professional model, and a resident of the United Kingdom.

26.     Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and a resident of Miami-Dade County, Florida.

27.     Plaintiff Jaclyn Swedberg ("Swedberg") is a well-known professional model, and a resident of San Bernardino County, California.

28.     Plaintiff Jamie Middleton d/b/a Jamie Eason ("Middleton") is a well-known professional model, and a resident of Harris County, Texas.

29.     Plaintiff Jessica Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

30.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Los Angeles County, California.

31.     Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

32.     Plaintiff Krystal Forscutt Hipwell ("Hipwell") is a well-known professional model, and a resident of Caringbah, Australia.

33.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

34.     Plaintiff Lyna Perez ("Perez") is a well-known professional model, and a resident of Dorado County, Puerto Rico.

35.     Plaintiff Melanie Iglesias ("Iglesias") is a well-known professional model, and a resident of Los Angeles County, California.

36.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

37.     Plaintiff Rosie Wicks a/k/a Rosie Jones ("Wicks") is a well-known professional model, and a resident of Richmond, United Kingdom.

38.     Plaintiff Shelby Chesnes ("Chesnes") is a well-known professional model, and a resident of Palm Beach County, Florida.

39.     Plaintiff Sarah Stage ("Stage") is a well-known professional model, and a resident of Los Angeles County, California.

***Orange Lantern***

40.     Defendant Orange Lantern is a Massachusetts corporation with a principal place of business in Palmer, Massachusetts.  During times relevant to this action Orange Lantern operated Magic Lantern in Palmer, Massachusetts.

## FACTUAL ALLEGATIONS

41.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

42.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

43.     Each of the Plaintiffs' Images was misappropriated by Orange Lantern and used in Magic Lantern advertising to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Magic Lantern.

44.     In the case of every Plaintiff, such appearance was false.

45.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Orange Lantern's improper and illegal use of their Images, and Orange Lantern's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

46.     Further, in certain cases Orange Lantern misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

47.     By using the Plaintiffs' image and likeness, Orange Lantern did not use their own advertising idea, and instead used the Plaintiffs' (or their licensees') advertising ideas to promote their club to the public.

***Plaintiffs' Backgrounds and Careers***

48.     Abigail Ratchford born in Pennsylvania, is an American model and aspiring actress known for taking the Internet by storm in 2013. Abigail's deft use of social media, combined with the provocative pictures showcasing the brunette's 36DD-24-36 frame, proved a winning combination. This formula helped land her on numerous men's websites, a six page print spread in a popular Australian men's magazine, and also led to her being selected to audition for parts in Maxim, a feature film, and television shows found on ABC and E! Networks. She has over 9.1 million followers on Instagram, 4,200,085 followers of Facebook, and 807,494 followers on Twitter.

49.     That we know of, Ratchford is depicted in the photo in Exhibit "A" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Ratchford was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

50.     Ratchford has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Andra Cheri Moreland a/k/a Ana Cheri is a published model who has worked with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz, was featured as a *Maxim* Instagram Girl of the Week. She is also *Playboy's* Playmate of the Month (October 2015). Ana has 12,360,817 followers on Instagram, 230,276 followers on Twitter, and 6,279,028 followers on Facebook.

52.     That we know of, Moreland is depicted in the photos in Exhibit "B" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Moreland was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.     Moreland has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.     Arianny Celeste Lopez is an American model, business woman and celebrity. Ms. Celeste is recognized as one of the most consistent and most popular personalities of the UFC where she has worked as an Octagon Girl since 2006. Ms. Celeste is the Co-Host of the popular Velocity TV show, Overhaulin'. She is adored around the world for her exotic beauty and great relationship with her fans. Ms. Celeste booked her first modeling job when she was just four

months old. Growing up as a very athletic and hardworking young woman, she excelled in cheer, dance and gymnastics before attending the University of Nevada Las Vegas (UNLV) to purse a degree in Fitness Management and Nutrition. Fluent in Spanish, Ms. Celeste has quickly become one of the most sought after talents in the modeling world and has appeared on the covers of some of the world's most foremost magazines including, Playboy, Maxim US, FHM, Maxim Korea, Maxim Philippines, FHM Australia and UFC Magazine. In addition to modeling, Ms. Celeste has hosted television shows, appeared in short films and recorded some original music. Ms. Celeste is in an elite class of Social Media influencers with over 3.2 million Instagram followers, 702,055 Twitter followers and an incredible 6 million fans on Facebook combined with her own personal website.

55.     That we know of, Lopez is depicted in the photos in Exhibit "C" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Lopez was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

56.     Lopez has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

57.     Chantel Zales is an American model, actress and social media phenom. Ms. Zales started modeling right out of high school and is based in LA California. Ms. Zales has been featured in Maxim magazine, FHM magazine in the USA, Thailand, Norway and the Philippines, Lowrider magazine feature and cover, Koncept magazine, Kassanova magazine, Show, Glam Jam, Hush Hush, Kaboom!, GuySpeed.com and Venus Zine. Ms. Zales has also featured in catalogs and

campaigns such as, Gila River Casino, Lone Butte Burger, Verona Chophouse, American Bandstand Express, Apple, Sassimi Spa, Rachelle's Salon and for The American Heart Association. Ms. Zale has also appeared in over ten films including Piranha 3D and Young Americans, and has a number of TV appearances to her credit including Pepsi, Bad Boy Fight Night, APS Electric and Acura of Tempe. Ms. Zales is the Brand Ambassador for Shredz fitness clothing. Ms. Zale has over 4.1 million Instagram followers and a further 1 million on her personal Facebook and fan page.

58.     That we know of, Zales is depicted in the photos in Exhibit "D" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Zales was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

59.     Zales has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

60.     Danielle Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought model, host, and actor. She shot to fame by winning Miss Hawaiian Tropic Brazil and competing worldwide. As a model, she has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes. She was also a contract model for Fredericks of Hollywood and L*Space, also for Rockstar Energy's Miss Motorcross and Monster Energy Dime Squad Girl. She has appeared in many magazines and graced the covers of *Maxim* and *Elegant*. Her career on TV is just as impressive with appearances on *The New Girl*, *The Finder, Breaking In*, *Cougar Town, CSI*

*Entourage, The Jonas Brothers, Miami Trauma, Dark Blue, Love Bites, Friends with Benefits, Battle LA, The Ex's* and hosting the series *WPT Royal Flush*. She has 182,731 followers on Instagram and 16,441 followers on Twitter.

61.     That we know of, Ruiz is depicted in the photo in Exhibit "E" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Ruiz was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

62.     Ruiz has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

63.     Jaime Edmondson-Longoria comes from a family of police officers. Ms. Edmondson graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting the police force to become a cheerleader for the Miami Dolphins. Ms. Edmondson and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Ms. Edmondson was the Playmate of the Month in the January, 2010 issue of "Playboy." She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets. Ms. Edmondson and her fiancée, MLB Superstar Evan Longoria MLB superstar, have 2 children

64.     That we know of, Longoria is depicted in the photo in Exhibit "F" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that

Longoria was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

65.     Longoria has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

66.     Jamillette Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty, Fashion, TV, and is now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current face of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba International. Jamillette's magazine highlights include those of GQ Magazine, Maxim Australia, Open Magazine, and Esquire.

67.     That we know of, Gaxiola is depicted in the photo in Exhibit "G" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Gaxiola was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

68.     Gaxiola has never been employed at Magic Lantern, has never been hired to

endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

69.     Ina Schnitzer a/k/a Jordan Carver is a German glamour model and actress based in the United States.  Jordan became a commercial spokeswoman for online German consumer electronics giant Redcoon. She set a record by appearing on the cover of Britain's Zoo magazine six times. Jordan won the contest for the racing sport seat production company COBRA and became their spokes model-a position she held till recently. She later won second place on the Top 100 Internet Model Newcomer of the Year list after being nominated by Break Media. She has 1,000,000 followers on Instagram, 207,059 followers on Twitter, and nearly 4,000,000 followers on Facebook.

70.     That we know of, Schnitzer is depicted in the photo in Exhibit "H" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Schnitzer was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

71.     Schnitzer has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

72.     Julianne Klaren is, and at all times relevant to this action is an American model, spokeswoman, businesswomen and mother. Ms. Klaren has been named in the top ten most beautiful women on Instagram and has been the feature of countless feature interviews and photo shoots. Ms. Klaren was born, raised and still lives in San Diego, California. Ms. Klaren has become

a social media influencer of note with her rapid rise to the multi-million followers elite category. Ms. Klaren currently has over 5 Million Instagram followers and has her own website that is commercialized.

73.     That we know of, Klaren is depicted in the photos in Exhibit "I" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Klaren was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

74.     Klaren has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

75.     Lucy Pinder is, and at all times relevant to this action, an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models. Ms. Pinder has featured in publications such as FHM, Nuts, Loaded and the Daily Star, and hundreds of others. Ms. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006 and 2007. Ms. Pinder was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of Nuts magazine cover. Ms. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) and others, and on large national and international advertising campaigns. Ms. Pinder has an established and developing acting career with many TV appearances and Film credits. Ms. Pinder has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Ms. Pinder was also a contestant on Celebrity Big Brother. Ms. Pinder had starring roles in films such as The Seventeenth Kind, Age of Kill, and Warrior

Savitri. Ms. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Ms. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Ms. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Ms. Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram and Twitter.

76.     That we know of, Pinder is depicted in the photo in Exhibit "J" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Pinder was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

77.     Pinder has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

78.     Tiffany Toth Gray a/k/a Tiffany Toth is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Ms. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Ms. Toth has over 3,804,626 Facebook followers, 1,375,514 Instagram followers, and 258,447 Twitter followers.

79.     That we know of, Gray is depicted in the photo in Exhibit "K" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Gray was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

80.     Gray has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

81.     Hobbs is an American model, spokeswoman and businesswoman. Ms. Hobbs has been modeling since she was 13. She grew up in Hawaii and worked between Honolulu, HI and Los Angeles, CA. Ms. Hobbs was chosen to shoot for *Playboy* through an open call and was chosen to be the *Playboy* Playmate of the month for December 2010. She continued to work for and with *Playboy* starring in the 'Benchwarmer Series' and personal appearances and videos. Ms. Hobbs has her own range of merchandise and an e-commerce site.

82.     That we know of, Hobbs is depicted in the photos in Exhibit "L" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Hobbs was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

83.     Hobbs has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

84.     Cerny is a fitness professional, television personality, blogger, and model. She

was former Playboy Playmate of the Month (October 2011), as well as a cover model for *Health & Wellness Magazine*. She loves to blog about the importance of eating healthy and working out. She is also chairwoman and Founder of Play Foundation, which is a global foundation founded for the purpose of bringing the youth closer to their love of music. Ms. Cerny is very well known throughout the social media world with 4.1 million Vine followers, 2.8 million Instagram followers, 232 thousand YouTube subscribers, 2.3 million Facebook fans, over 360 thousand followers on Snapchat, and 341 thousand Twitter followers.

85.     That we know of, Cerny is depicted in the photos in Exhibit "M" to promote Magic Lantern on its Facebook page. These Images were intentionally altered to make it appear that Cerny was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

86.     Cerny has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

87.     Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as *Show, Maxim* and *Raw*, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

88.     That we know of, Geiger is depicted in the photos in Exhibit "N" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Geiger

was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

89.    Geiger has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

90.    Milani is the world's most famous pinup model, who is frequently named one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Milani also became the winner of Miss Bikini World 2007. At 21, Milani was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Milani was selected as the 99th most desired woman in the world by *Askmen Magazine*. In 2011, she was ranked in the 5th position in championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013, she was one of ten (10) most desirable women in the world. Milani's social media reach has hit over 660 thousand followers on Instagram, 6.3 million Facebook likes, and over 126 thousand followers on Twitter.

91.    That we know of, Milani is depicted in the photos in Exhibit "O" to promote Magic Lantern on its Facebook page. These Images were intentionally altered to make it appear that Milani was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

92.    Milani has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

93.     Glover is an English model who has completed work for magazines such as *Zoo, Loaded, Monkey, Talk Sport, The Daily Star*, and *The Sun*.  As well as for companies like Lynx, Ann Summers, Pabo Lingerie, o2, Channel 4, Harley Davison and Simon Copeland clothing. Glover has a combined 975,333 followers on Instagram, Twitter, Facebook, and YouTube

94.     That we know of, Glover is depicted in the photo in Exhibit "P" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Glover was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

95.     Glover has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

96.     Hepner is a successful model and actress. She has been highlighted in Playboy Magazine several times, Ciroc Commercials, and performed a role in a music video for the famous country singer, Rascal Flatts.  Hepner has also modeled for well-known companies such as Coquette Lingerie, American Curves, and Rockstar Energy Drink Calendars and Ads, among many other companies.

97.     That we know of, Hepner is depicted in the photos in Exhibit "Q" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Hepner was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

98.     Hepner has never been employed at Magic Lantern, has never been hired to

endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

99.     Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of *Models Latina* March 2015 and *Shock* magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

100.    That we know of, Crespo is depicted in the photo in Exhibit "R" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Crespo was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

101.    Crespo has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

102.    Swedberg is an American actress and model. Swedberg has appeared in a number of TV series including, Badass, Playboy's Beach House, Pauly Shore's Paulytic's, Snake and Mongoose and a new series about to air called Muck in which she has a starring recurring role. Swedberg was *Playboy's* Playmate of the month April 2011 and went on to win Playmate of the Year in 2012 and 2013.

103.    That we know of, Swedberg is depicted in the photos in Exhibit "S" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that

Swedberg was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

104.    Swedberg has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

105.    Middleton is an American model, Fitness model, businesswoman, nutritionist, and spokeswoman. Middleton is a former NFL cheerleader and winner of The World's Fittest Model Competition. She graduated from Texas A&M University with a degree in speech communication/organization. Middleton has been the featured subject and cover girl on many fitness and women's magazines. She currently a full-time spokesperson for Bodybuilding.com and has her own line of swimwear as well as a supplement line with Labrada nutrition. Middleton is a devout Christian and is married to Michael Middleton who is a worship leader in their church. Middleton has more than 2 million fans between Facebook, Instagram and Twitter.

106.    That we know of, Middleton is depicted in the photo in Exhibit "T" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Middleton was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

107.    Middleton has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

108.    Hinton was discovered by a talent manager at a wedding at 14. By 16 she locked

in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

109.    That we know of, Hinton is depicted in the photos in Exhibit "U" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Hinton was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

110.    Hinton has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

111.    Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine,* and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

112.    That we know of, Burciaga is depicted in the photo in Exhibit "V" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

113.    Burciaga has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

114.    Krupa is, and at all times relevant to this action was, a Polish American model,

actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared on the cover of magazines such as *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim*, and twice for *Playboy*. Krupa has also graced the covers of South African *GQ*, and the Polish editions of *Cosmopolitan, InStyle, Glamour*, and *Grazia*. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels For Animal Rescue, with her friend Gabi Gutierrez. In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010.

115.    That we know of, Krupa is depicted in the photo in Exhibit "W" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Krupa was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

116.    Krupa has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern,

has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

117.    Hipwell is an Australian model and reality TV contestant and personality. Ms. Hipwell has appeared on over 20 Men's magazine covers such as *Zoo Weekly, FHM*, and *Ralph* as well as the video game Need for Speed: ProStreet. Ms. Hipwell starred in Australian Big Brother series and then another Australian reality show, It Takes Two. Ms. Hipwell then became a regular guest on Bigpond GameArena, Benny and Richie show, and the long running series Packed to the Rafters. Hipwell is married to Neil Hipwell and together they have an extremely successful building and renovations company Future Flip ([www.futureflip.com.au](http://www.futureflip.com.au)).

118.    That we know of, Hipwell is depicted in the photos in Exhibit "X" to promote Magic Lantern on its Facebook page. These Images were intentionally altered to make it appear that Hipwell was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

119.    Hipwell has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

120.    Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook followers, and over 5.6 thousand Twitter followers.

121.    That we know of, Posada is depicted in the photo in Exhibit "Y" to promote Magic

Lantern on its Facebook page. This Image was intentionally altered to make it appear that Posada was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

122. Posada has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

123. Perez is an American bikini, swimsuit and lingerie model best known for her spread in Playboy magazine and her photos on Instagram. The Miami native had always dreamed of becoming a model, and took the leap once she graduated and turned 18 years old. Perez was born and raised in Miami, Florida. She first became popular on the social media platform Instagram, where she shares photos of herself in bikinis and lingerie. She has been featured in publications such as Playboy. Her photos have earned her 6.6 million followers on Instagram, 1,200 followers on TikTok and 27,000 followers on Facebook.

124. That we know of, Perez is depicted in the photo in Exhibit "Z" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Perez was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

125. Perez has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

126. Iglesias is an American model and actress, and social media influencer. After

being voted *Maxim's* Hometown Hotties" winner in 2010, she has been featured in magazines

such as *World's Most Beautiful*, *Esquire*, and *Vibe*. Iglesias has appeared in the World Poker

Tour series and also appeared as herself on all seasons of *Guy Code* and *Girl Code*, both of

which air on MTV. She also stars in the *Guy Code* spin off *Guy Court,* she has appeared as a

guest on the *Ellen DeGeneres show,* she hosted the *MLB Fan Cave,* and has her first starring

role in a feature film *'Abnormal Attraction'* being released in 2016. Her social media consists of

1.2 million Instagram followers, over 1.5 million Facebook followers, and 602 thousand Twitter

followers.

127.    That we know of, Iglesias is depicted in the photos in Exhibit "AA" to promote

Magic Lantern on its Facebook page. These Images were intentionally altered to make it appear

that Iglesias was either a stripper working at Magic Lantern, that she endorsed the Club, or that

she was otherwise associated or affiliated with the Club.

128.    Iglesias has never been employed at Magic Lantern, has never been hired to

endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern,

has received no remuneration for Orange Lantern's unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

129.    Acosta started her classic ballet studies at the age of four at the Centro de la

Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y

Arte), where she excelled as one of the most gifted students of the academy. After graduating

with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with

mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest

soloist member in 2002. Partaking in all major classic and modern shows in the Dominican

Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the

category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 36 thousand Facebook followers, over 1.6 million Instagram followers, and over 291 thousand Twitter followers.

130.    That we know of, Acosta is depicted in the photo in Exhibit "BB" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

131.    Acosta has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

132.    Wicks known professionally as Rosie Jones, is an English model and actress. Wicks joined the Samantha Bond Management and started modeling in 2008 at the age of 17. At 18, she became a Page 3 girl for The Sun newspaper and began modeling for such magazines as *FHM* and *Front*. Wicks was invited to the PES Rankings UK Main Event to sign some posters and to give away the prize for the event, where she was a crowd favorite. She appeared in music videos for "You Can Dance" with Bryan Ferry and Professor Green's video "Be Good To Green". Wicks gained huge publicity and helped the cause when she raised money for Help for Heroes by ascending Mount Toubkal in Morocco. During the 2013 Christmas holiday season, she appeared in a number of music video clips of the German comedy band, Keule. Wicks'

social media profile is growing rapidly along with a professional personal website that was built by her fans.

133.     That we know of, Wicks is depicted in the photos in Exhibit "CC" to promote Magic Lantern on its Facebook page. These Images were intentionally altered to make it appear that Wicks was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

134.     Wicks has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

135.     Chesnes is an American model, actress and businesswoman. Ms. Chesnes started modeling very young and has appeared in many magazines, catalogs and TV commercials. Ms. Chesnes worked for *Playboy* and became *Playboy's* Miss July. Ms. Chesney studied psychology at Florida Atlantic University and owned her own spray tan business. Ms. Chesnes has over 1.2 million followers on Facebook, over 341 thousand on Instagram, over 125 thousand on Twitter and her own e commerce web page.

136.     That we know of, Chesnes is depicted in the photos in Exhibit "DD" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Chesnes was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

137.     Chesnes has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

138.    Stage has worked for brands such as Fredericks of Hollywood, Jafra Cosmetics, Buffalo Jeans, Sky Clothing, and Beach Bunny Swimwear. She has also done commercials for Kia, Budweiser, Samsung, and has appeared in magazines such as *Maxim, Shape*, and *Allure*. Stage is a social media influencer with over 2 million followers on Instagram, over 21 thousand followers on Twitter, 50 thousand views on SnapChat, and over 113 thousand likes on Facebook.

139.    That we know of, Stage is depicted in the photo in Exhibit "EE" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Stage was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

140.    Stage has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Orange Lantern's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Orange Lantern's Business***

141.    Upon information and belief, Orange Lantern operated, during the relevant time period, Magic Lantern, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

142.    Upon information and belief, and in furtherance of its promotion their promotion of Magic Lantern, Orange Lantern owns, operates and controls Magic Lantern's social media accounts, including its Facebook, Twitter, and Instagram accounts.

143.    Orange Lantern used Magic Lantern's Facebook, Twitter, and Instagram accounts to promote Magic Lantern, and to attract patrons thereto.

144.    Orange Lantern did this for their own commercial and financial benefit.

145.    Orange Lantern have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

146.    Orange Lantern used Plaintiffs' Images and created the false impression that they worked at or endorsed Magic Lantern to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

147.    As Orange Lantern were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Magic Lantern and at no point have any of the Plaintiffs ever endorsed Magic Lantern, or otherwise been affiliated or associated with Magic Lantern.

148.    All of Orange Lantern's activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Orange Lantern did not compensate Plaintiffs for their use of their Images.

149.    As such, Plaintiffs have never received any benefit from Orange Lantern's use of their Images.

***Standard Business Practices in the Modeling Industry***

150.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

151.    The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Orange Lantern's Misappropriation of Plaintiffs' Images***

152.    As detailed above, Orange Lantern knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Magic Lantern by and through various marketing and promotional mediums including, without limitation, Magic Lantern's Facebook.

153.    Orange Lantern showcased Plaintiffs' Images on Magic Lantern's social media pages to create the false impression that Plaintiffs worked at Magic Lantern, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

154.    Orange Lantern did so to attract clientele to Magic Lantern, promote Magic Lantern, and thereby generate revenue for Orange Lantern.

155.    Orange Lantern were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Magic Lantern.

156.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

157.    In addition, Plaintiffs allege that any improper or unauthorized use of their Images

substantially injures their careers.

158.    This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Orange Lantern's use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

159.    At no point were any of the Plaintiffs ever affiliated with Magic Lantern, or Orange Lantern.

160.    Each of Plaintiffs' Images was used without her consent.

161.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Orange Lantern, to request the use of any of Plaintiffs' Images.

162.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

163.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Magic Lantern website, Twitter, Facebook, or Instagram accounts.

164.    Orange Lantern used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

165.    Upon information and belief, Orange Lantern have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of California Civil Code § 3344 – Statutory Misappropriation of Publicity – on behalf of Plaintiffs Lopez, Ratchford, Moreland, Zales, Ruiz, Klaren, Pinder, Gray, Cerny, Milani, Glover, Swedberg, Hinton, Burciaga, Krupa, Hipwell, Posada, Iglesias, Acosta, Wicks and Stage)**

174.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

175.    Each of Plaintiffs Lopez, Ratchford, Moreland, Zales, Ruiz, Klaren, Pinder, Gray,

Cerny, Milani, Glover, Swedberg, Hinton, Burciaga, Krupa, Hipwell, Posada, Perez, Iglesias, Acosta, Wicks and Stage are either residents of the State of California or residents of the United Kingdom or Australia.

176.    Under California Civil Code § 3344(a): "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent…shall be liable for any damages sustained by the person or persons injured as a result thereof."

177.    This provision also provides that punitive damages may be awarded, and that the "prevailing party in any action … shall be entitled to attorney's fees and costs."

178.    Neither the United Kingdom, nor Australia, recognize a statutory right of publicity.

179.    Orange Lantern has violated each of the California Plaintiff's statutory right of publicity under California law by appropriating each of their likeness for commercial purposes without authority or consent.

180.    At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

181.    Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized their image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

182.    At no point did Defendant ever receive permission or consent to use any

Plaintiff's Image on their website or social media account.

183.   At no point did Orange Lantern ever compensate Plaintiffs for its use of their Images.

184.   Orange Lantern's actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of publicity.

185.   No applicable privilege or authorization exists for Orange Lantern's use of Plaintiffs' Images.

186.   As such, these Plaintiffs have been harmed in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Common Law Misappropriation under California Law - on behalf of Plaintiffs Lopez, Ratchford, Moreland, Zales, Ruiz, Klaren, Pinder, Gray, Cerny, Milani, Glover, Swedberg, Hinton, Burciaga, Krupa, Hipwell, Posada, Iglesias, Acosta, Wicks and Stage)**

187.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

188.   Each of Plaintiffs Lopez, Ratchford, Moreland, Zales, Ruiz, Klaren, Pinder, Gray, Cerny, Milani, Glover, Swedberg, Hinton, Burciaga, Krupa, Hipwell, Posada, Perez, Iglesias, Acosta, Wicks and Stage are either residents of the State of California or residents of the United Kingdom or Australia.

189.   California recognizes a common law right of publicity pursuant to which a person or entity is forbidden from using a plaintiff's identity for her own advantage, commercially or otherwise, without consent.

190.   Neither the United Kingdom nor Australia recognizes a common law right of publicity.

191.    Orange Lantern invaded and violated each of the California Plaintiff's common

law right of publicity under California law by using their image and likeness for commercial purposes without consent.

192.     At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

193.     Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized their image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

194.     At no point did Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

195.     At no point did Orange Lantern ever compensate Plaintiffs for its use of their Images.

196.     Orange Lantern's actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of publicity.

197.     No applicable privilege or authorization exists for Orange Lantern's use of Plaintiffs' Images.

198.     As such, these Plaintiffs have been harmed in an amount to be determined at trial.

### THIRD CASE OF ACTION
**(Violation of Florida's Right of Publicity, Section 540.08, Fla. Stat. – on behalf of Plaintiffs Crespo and Chesnes)**

199.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

200.     Plaintiffs Crespo and Chesnes are residents of Florida.

201.     Florida recognizes a statutory right of publicity pursuant to 540.08 of the Florida

Statutes, which forbids a person or entity from using the name, photograph, or other likeness of any person without express written or oral consent.

202.     Orange Lantern invaded and violated the above-named Plaintiffs' statutory right of publicity under Florida law by publishing their Images on Magic Lantern's website or related social media accounts without consent.

203.     At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

204.     Magic Lantern's website and social media accounts were designed to attract business to the Club and generate revenue for Orange Lantern.

205.     Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized their image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

206.     At no point did Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

207.     At no point did Orange Lantern ever compensate Plaintiffs for its use of their Images.

208.     Orange Lantern's actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

209.     No applicable privilege or authorization exists for Orange Lantern's use of Plaintiffs' Images.

210.     As such, Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Violation of Florida's Common Law Right of Publicity – on behalf of Plaintiffs Crespo and Chesnes)

211.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

212.    Plaintiffs Crespo and Chesnes are residents of Florida.

213.    Florida recognizes a common law right of publicity pursuant to which a person or entity is forbidden from using a plaintiff's identity for her own advantage for commercial purposes commercially without consent.

214.    Orange Lantern invaded and violated each of the above-referenced Plaintiffs' right of publicity under Florida law by publishing their Images on Magic Lantern's website or related social media accounts without consent.

215.    At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

216.    Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

217.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

218.    At no point did Orange Lantern ever compensate Plaintiffs for its use of their Images.

219.    Orange Lantern's actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

220.    No applicable privilege or authorization exists for Orange Lantern's use of Plaintiffs' Images.

221.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Violation of Texas's Common Law Right of Publicity – on behalf of Plaintiff Middleton)**

222.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

223.    Plaintiff Middleton is a resident of Texas.

224.    Texas recognizes a common law right of publicity pursuant to which a person is forbidden from using a plaintiff's identity for commercial purposes without consent.

225.    Orange Lantern invaded and violated Middleton's right of publicity under Texas law by publishing her Images on Magic Lantern's website or related social media accounts as part of Orange Lantern's advertising campaign.

226.    At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

227.    Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized Middleton's image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

228.    At no point did Defendant ever receive permission or consent to use Middleton's Image on their website or social media account.

229.    At no point did Orange Lantern ever compensate Middelton for its use of her Images.

230.    Orange Lantern's actions are an unreasonable, substantial and/or serious interference with Middleton's right of privacy.

231.    No applicable privilege or authorization exists for Orange Lantern's use of Middleton's Images.

232.    As such, Middleton has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Violation of Arizona's Common Law Right of Publicity – on behalf of Plaintiff Longoria)

233.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

234.    Plaintiff Longoria is a resident of Arizona.

235.    Arizona recognizes a common law right of publicity pursuant to which a person or entity is forbidden from using a plaintiff's identity for her own advantage for commercial purposes without consent.

236.    Orange Lantern invaded and violated Longoria's right of publicity under Arizona law by publishing her Images on Magic Lantern's website or related social media accounts as part of Orange Lantern's advertising campaign.

237.    At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

238.    Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized Longoria's image and likeness that was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

239.    At no point did Defendant ever receive permission or consent to use any

Longoria's Images on their website or social media account.

240.     At no point did Orange Lantern ever compensate Longoria for its use of her Images.

241.     Orange Lantern's actions are an unreasonable, substantial and/or serious interference with Longoria's right of publicity.

242.     No applicable privilege or authorization exists for Orange Lantern's use of Longoria's Images.

243.     As such, Longoria has been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
**(Violation of Hawaii's Statutory Law Right of Publicity, Haw. Rev. Stat. § 482P-5, *et. seq.* – on behalf of Plaintiff Hobbs)**

244.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

245.     Plaintiff Hobbs is a resident of Hawaii.

246.     Hawaii recognizes a statutory right of publicity pursuant to which a person or entity is forbidden from using a plaintiff's name, voice, signature or likeness, on or in goods, merchandise, or services, or for purposes of advertising products, without express written consent.

247.     Orange Lantern invaded and violated Hobbs' right of publicity under Hawaii law by publishing her Images on Magic Lantern's website or related social media accounts as part of Orange Lantern's advertising campaign.

248.     At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

249.     Plaintiffs are informed and believe and hereon allege that the manner in which

Orange Lantern posted and publicized Hobbs' image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

250.    At no point did Defendant ever receive permission or consent to use Hobbs' Image on their website or social media account.

251.    At no point did Orange Lantern ever compensate Hobbs for its use of her Images.

252.    Orange Lantern's actions are an unreasonable, substantial and/or serious interference with Hobbs' right of privacy.

253.    No applicable privilege or authorization exists for Orange Lantern's use of Hobbs' Images.

254.    As such, Hobbs has been damaged in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION
**(Violation of New York's Statutory Law Right of Publicity, N.Y. Civil Rights Law, § 51. – on behalf of Plaintiff Geiger)**

255.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

256.    Plaintiff Geiger is a resident of New York.

257.    New York recognizes a statutory right of publicity pursuant to which a person or entity is forbidden from using a plaintiff's name or likeness for advertising purposes without express written consent.

258.    Orange Lantern invaded and violated Geiger's right of publicity under New York law by publishing her Images on Magic Lantern's website or related social media accounts as part of Orange Lantern's advertising campaign.

259.     At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

260.     Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized Geiger's image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published Geiger's image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

261.     At no point did Defendant ever receive permission or consent to use Geiger's Images on their website or social media account.

262.     At no point did Orange Lantern compensate Geiger for its use of her Images.

263.     Orange Lantern's actions are an unreasonable, substantial and/or serious interference with Geiger's right of privacy.

264.     No applicable privilege or authorization exists for Orange Lantern's use of Geiger's Images.

265.     As such, Geiger has been damaged in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
**(Violation of Nevada's Statutory Right of Publicity, N.R.S. 597.790 - on behalf of Plaintiff Gaxiola)**

266.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

267.     Plaintiff Gaxiola is a resident of Nevada.

268.     Nevada recognizes a statutory right of publicity under N.R.S. 597.790 which prohibits the commercial use of another's name, voice, signature, photograph or likeness without written consent.

269.    Orange Lantern invaded and violated Gaxiola's right of publicity under Nevada law by publishing her Images on Magic Lantern's website or related social media accounts as part of Orange Lantern's advertising campaign.

270.    At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

271.    Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized their image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published Gaxiola's image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

272.    At no point did any Defendant ever receive permission or consent to use Gaxiola's Image on their website or social media account.

273.    Orange Lantern were at all relevant times aware that they never received Gaxiola's permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

274.    At no point did Orange Lantern ever compensate Gaxiola for its use of their Images.

275.    Orange Lantern's actions are an unreasonable, substantial and/or serious interference with each Gaxiola's right of privacy.

276.    No applicable privilege or authorization exists for Orange Lantern's use of Gaxiola's Images.

277.    As such, Gaxiola has been damaged in an amount to be proven at trial.

## TENTH CAUSE OF ACTION

**(Violation of Puerto Rico's Statutory Right of Publicity, Act No. 139 - on behalf of Plaintiff Perez)**

278.  Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

279.  Plaintiff Perez is a resident of Puerto Rico.

280.  Puerto Rico recognizes a statutory right of publicity under Act No. 139 which prohibits the commercial use of another's name, voice, signature, photograph or likeness without written consent.

281.  Orange Lantern invaded and violated Perez's right of publicity under Puerto Rico law by publishing her Images on Magic Lantern's website or related social media accounts as part of Orange Lantern's advertising campaign.

282.  At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

283.  Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized Perez's image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Orange Lantern published her image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

284.  At no point did any Defendant ever receive permission or consent to use Perez's Images on their website or social media account.

285.  At no point did Orange Lantern ever compensate Perez for its use of her Images.

286.  Orange Lantern's actions are an unreasonable, substantial and/or serious interference with each Perez's right of publicity.

287.    No applicable privilege or authorization exists for Orange Lantern's use of Plaintiffs' Images.

288.    As such, Perez has been damaged in an amount to be determined at trial.

### ELEVENTH CAUSE OF ACTION
**(Violation of Germany's Right of Publicity - on behalf of Plaintiff Schnitzer)**

289.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

290.    Plaintiff Schnitzer is a resident of Germany.

291.    Germany recognizes a right of personality, of which the right of publicity is one component, and which includes the right of an individual to keep one's identity traits from being commercially exploited without consent.

292.    This right emanates from section 823(a) of the German Civil Code, which provides that "a person who, intentionally or negligently, unlawfully injuries the life, body, health, freedom, property or another right of another person is liable for compensation for the other party for the damage arising from this."

293.    German courts have recognized that the right of personality is among the "another rights" addressed in this section.

294.    Orange Lantern invaded and violated Schnitzer's right of publicity under German law by publishing her Images on Magic Lantern's website or related social media accounts as part of Orange Lantern's advertising campaign.

295.    At all relevant times, Magic Lantern's website and social media accounts were used and operated by Magic Lantern for advertising and trade purposes.

296.    Plaintiffs are informed and believe and hereon allege that the manner in which Orange Lantern posted and publicized Schnitzer's image and likeness was hidden, inherently

undiscoverable, or inherently unknowable, in that Orange Lantern published her image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

297.    At no point did any Defendant ever receive permission or consent to use any Schnitzer's Image on their website or social media account.

298.    At no point did Orange Lantern ever compensate Schnitzer for its use of her Images.

299.    Orange Lantern's actions are an unreasonable, substantial and/or serious interference with Schnitzer's right of privacy.

300.    No applicable privilege or authorization exists for Orange Lantern's use of Schnitzer's Images.

301.    As such, Schnitzer is entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Orange Lantern as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b) For attorneys' fees for violation of California Code § 3344 and any other relevant statute or authority;

(c) For punitive damages under California Code § 3344 and any other relevant statute or authority; and,

(d) For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

PLAINTIFFS,
By their Attorneys,

/s/ Paul Sullivan

Paul V. Sullivan, BBO# 634466
33 Broad Street, Suite 302
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@psullivanlaw.com

*and*

John V. Golaszewski*
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax: (855).220.9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*