UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARIANNY CELESTE LOPEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ORANGE LANTERN, INC.,<br><br>Defendant. | Civil Action No. 24-30035-MGM |

MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
AND DEFENDANT'S MOTION TO CONDUCT DISCOVERY
(Dkt. Nos. 11, 23, and 32)

July 24, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Plaintiffs, Rosa Acosta, Jessica Burciaga, Amanda Cerny, Shelby Chesnes, Iesha Marie Crespo, Jaime Edmondson-Longoria, Jamillette Gaxiola, Brenda Geiger, Emma Glover, Tiffany Toth Gray, Hillary Hepner, Jessica Hinton, Krystal Forscutt Hipwell, Ashley Hobbs, Melanie Iglesias, Rosie Jones, Julianne Klaren, Joanna Krupa, Arianny Celeste Lopez, Jaime Middleton, Denise Milani, Andra Cheri Moreland, Lyna Perez, Lucy Pinder, Lina Posada, Abigail Ratchford, Danielle Ruiz, Ina Schnitzer, Sarah Stage, Jacklyn Swedberg, and Chantel Zales (collectively "Plaintiffs") are a group of professional models and social media influencers. They allege Orange Lantern, Inc. ("Defendant") violated their rights to control the use of their images, as protected by the laws of the places where they lived at the times the images were posted. Plaintiffs filed this action shortly after this court dismissed similar claims brought in an earlier action. The parties have now filed cross-motions for summary judgment. Defendant has also filed a Motion to Conduct Discovery. For the reasons that follow, the court will

deny Plaintiffs' motion, deny Defendant's motion with respect to claims based on nine images posted after July 4, 2016, grant Defendant's motion as to claims based on forty-five images posted prior to July 4, 2016, and deny Defendant's Motion to Conduct Discovery.

## II.  SUMMARY JUDGMENT RECORD

Consistent with the requirements of Local Rule 56.1, Plaintiffs filed a Statement of Material Facts together with their motion for summary judgment. Their 56.1 Statement is divided into two sections under the headings: Plaintiffs' Backgrounds and Careers; and Defendant's Strip Club and Advertising. The first section contains just eight numbered paragraphs, all applicable to the entire group of plaintiffs:

1. Each Plaintiff is a professional model, actress and/or businesswoman who earns or has earned a living by promoting her image, likeness and/or identity to select clients, commercial brands, and media and entertainment outlets.
2. Each Plaintiff relies on her professional reputation for modeling, acting, hosting and other professional opportunities, has worked to establish herself as reliable, reputable, and professional, and has achieved celebrity status and fame in the modeling industry.
3. Each Plaintiff seeks to control the use and dissemination of her image, is consulted on and participates in the negotiation, vetting and selection of modeling, acting, brand spokesperson or hosting engagements, and each has been vigilant in building and protection [sic] her brand from harm, taint, or other diminution.
4. The use of each Plaintiff's image and likeness is subject to considerable negotiation. Each Plaintiff's image may only be used with their express authority subject to the terms and conditions of the agreement(s) she has entered into with that particular client.
5. Defendants [sic] did not, at any time, seek or obtain permission or authority to use or alter any Plaintiff's image to advertise, promote, market or endorse Defendants' [sic] strip club, Magic Lantern (or "Strip Club").
6. No Plaintiff has ever worked for Defendant in any capacity, ever agreed to associate with Defendant, ever agreed to participate in Defendant's advertising campaigns, ever agreed to endorse (and do not endorse or support) Defendant and their stripper lifestyle generally or the full friction and full nudity lifestyle activities, and never agreed (and would never agree) to appear at the activities being advertised at Defendant's strip club, Magic Lantern (the "Strip Club").
7. No Plaintiff was ever offered, or paid, any compensation by Defendants [sic] for the use of her Image to advertise, promote, market, or endorse Defendants' [sic] Strip Club.

> 8. Despite this, as set forth in Exhibits A through GG of the Complaint, and as explained in each of Plaintiff's accompanying declaration [sic], Defendant used one or more image of each Plaintiff to advertise and promote the Strip Club' [sic] commercial activities."

(Pls. L.R. 56.1 Statement of Mat. Facts, Dkt. No. 12, at 2-5 (record citations omitted).)

In the portion of the 56.1 statement addressing Defendant and its advertising, Plaintiffs described Mark Pessolano's involvement in operating the Magic Lantern and the role Greg Coutu, the individual who posted Plaintiffs' images, played in marketing Magic Lantern. Plaintiffs did not include any facts about specific postings or the process required to access the postings.

Defendant filed a response to Plaintiffs' 56.1 statement addressing the facts put forth by Plaintiffs and adding twenty-one additional facts. (Def.'s Consol. Statement of Mat. Facts, Dkt. 20.) Defendant then filed a cross-motion for summary judgment and included its own 56.1 statement. (Def.'s Statement of Mat. Facts, Dkt. No. 25.) Both filings include a listing of the images attached to Plaintiffs' complaint and the date of posting shown with each image. Nine of the images were posted between July 30, 2016 and November 21, 2018; the rest of the images were posted prior to July 4, 2016.

Plaintiffs opposed Defendant's cross-motion for summary judgment without filing a response directly to Defendant's 56.1 statement. Rather, Plaintiffs attached a declaration from a paralegal that described in general terms the process by which the paralegal searches for misappropriated images on websites and social media accounts used by businesses. The paralegal describes a "painstaking" research process that requires "days and weeks" to complete. (Davila Decl., Dkt. No. 34-1 at ¶¶ 8-9.) The declaration did not detail when the paralegal began searching for misappropriated images on behalf of individual plaintiffs, or identify characteristics specific to the Magic Lantern Facebook page that delayed the discovery of images until years (rather than weeks or months) after they were publicly posted.

### III.  DISCUSSION

Plaintiffs have moved for summary judgment as to liability on their right of publicity claims brought under the laws of Arizona, California, Florida, Hawaii, Nevada, New York, Puerto Rico, Texas, the United Kingdom, and Germany. Relying on the record created in the 2019 case and supplemented by new affidavits, they contend an entitlement to summary judgment as to Defendant's liability. Specifically, Plaintiffs argue only two elements must be shown to establish liability under the laws of each specified jurisdiction: (1) commercial use of a plaintiff's likeness by a defendant, and (2) absence of the plaintiff's consent. They assert both these elements are established by the undisputed record. Defendant disputes the sufficiency of the record to establish liability under the law of each relevant jurisdiction. Additionally, Defendant has filed a cross-motion in which it contends it is entitled to summary judgment because (1) the court lacks personal jurisdiction over Defendant, and (2) the claims are time-barred. For the reasons that follow, the court finds it has personal jurisdiction over Defendant and that the majority of Plaintiffs' claims are untimely. As to the remaining claims, genuine disputes of material facts prevent entry of summary judgment for either party.

A. Personal Jurisdiction and Service of Process

A court cannot enter a valid judgment against a defendant unless the court has personal jurisdiction over that defendant. *Burnham v. Superior Court of California*, 495 U.S. 604, 608-09 (1990); *see also* 3 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1063 (explaining that "[a] federal court may not proceed to a valid judgment" unless it has personal jurisdiction over the defendant). "Rule 4 is the starting point for assessing whether personal jurisdiction exists in federal court." 3 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1063. Pursuant to Rule 4(h), a corporation may be served in a judicial district of the United States in two ways: (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or (2) "by delivering a copy of

the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1), (h)(1). "Under the Massachusetts rules, service can be made on a corporation in two ways: 'by delivering a copy of the summons and of the complaint to an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process.'" *Egan v. Tenet Health Care*, 193 F. Supp. 3d 73, 80 (D. Mass. 2016) (quoting Mass. R. Civ. P. 4(d)(2)).

When the sufficiency of service is challenged by a defendant, the plaintiff bears "the ultimate burden of proving proper service." *Blair v. City of Worcester*, 522 F.3d 105, 112 (1st Cir. 2008). "A return of service generally serves as *prima facie* evidence that service was validly performed," provided the language of the return is sufficient to establish proper service under Fed. R. Civ. P. 4. *Id.* at 111. The return of service filed by Plaintiffs states that Mark Pessolano, the president of Defendant at the time of its dissolution, was personally served on May 31, 2024. (Pls. Return of Service, Dkt. No. 8; Ex. 11 to Def. Consolidated Statement of Material Facts, Dkt. No. 21-11.) Defendant asserts that this service was improper because Defendant was dissolved in December 2023 and no longer has any officers or representatives who can accept service for Defendant or act on its behalf. Defendant has not cited any authority supporting this position, and Massachusetts law specifically provides that voluntary "[d]issolution of a corporation shall not . . . prevent commencement of a proceeding by or against the corporation in its corporate name." Mass. Gen. Laws c. 156D, § 14.05. Additionally, voluntary dismissal does not "terminate the authority of the registered agent of the corporation." *Id.* The statute does not identify any steps that must be taken before litigation may be initiated against a voluntarily dissolved corporation, nor does it provide a specific method for making service on a dissolved corporation. Consistent with this statutory language, the court concludes both that

Defendant is subject to suit following dissolution and that personal service on Mark Pessolano, who was both Defendant's registered agent and president at the time of the dissolution, met the requirements of Fed. R. Civ. P. 4.

    B.  Statute of Limitations

Before determining the timeliness of Plaintiffs' claims, the court must first determine the date from which the statute of limitations is to be calculated. Plaintiffs argue the statute of limitations should be measured from July 2019 because the filing of the 2019 complaint tolled the statute of limitations until summary judgment entered for Defendant on those claims, and Plaintiffs filed the 2024 complaint three days after that ruling. Defendant argues the statute of limitations should be calculated from the date the 2024 action was filed and all the claims should be ruled untimely. The cases cited by Plaintiffs establish only that when a complaint is filed, the statute of limitations is tolled for purposes of that litigation. *See Xarras v. McLaughlin*, 850 N.E.2d 1111, 1112 (Mass. App. Ct. 2006); *West v. Conrail*, 481 U.S. 35, 39 (1987). Similarly, their invocation of Rule 15 is misplaced because the rule applies to amendments to a filing within the same case. Fed. R. Civ. P. 15. Plaintiffs elected to file a new action in 2024, rather than seek leave to amend their complaint in the 2019 action. However, the court is persuaded that it is appropriate to apply equitable tolling to the period during which Plaintiffs' right to privacy claims were pending in the 2019 action.

In diversity cases, "state law governs the tolling of the statute of limitations." 3 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1056. Under Massachusetts law, "[e]quitable tolling is used 'only sparingly,' . . . and is generally limited to specified exceptions." *Shafnacker v. Raymond James & Assocs., Inc.*, 683 N.E.2d 662, 666 (Mass. 1997) (quoting *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Those exceptions include situations in which the "plaintiff 'has actively pursued his judicial remedies by filing a defective pleading during the statutory period.'" *Id.* The court finds equitable tolling is appropriate in this case as Plaintiffs have been diligent in pursuing their right

of privacy claims since 2019, Defendant has been aware of the substantive nature of those claims since that time, and Plaintiffs would have timely filed their claims pursuant to the laws of their states of residence had they been aware they could not prevail on similar claims brought under Massachusetts law. The court will, therefore, apply equitable tolling for the period from July 1, 2019 through March 13, 2024.[1]

The parties also disagree about which jurisdictions' statutes of limitations apply to Plaintiffs' claims. Plaintiffs contend the three-year Massachusetts statute of limitations, and discovery rule, should be applied to all their claims. Defendant argues the court should assess the timeliness of each claim by applying the statute of limitations for the jurisdiction under whose substantive law the claim is brought. Under such an approach, the court would apply limitations periods of between one and three years to Plaintiffs' claims.

When sitting in diversity, this court applies the choice of law rules of Massachusetts, the forum state, to determine the applicable statute of limitations. *Holbrook v. Boston Scientific Corp.*, 487 F.Supp.3d 100, 105 (D. Mass. 2020) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Massachusetts applies the functional approach, as stated in the Restatement (Second) of Conflicts of Laws § 142, to decide which statute of limitations applies. *Kahn v. Royal Ins. Co.*, 709 N.E.2d 822, 823 (Mass. 1999). Under this rule, "the forum State generally will apply its own statute of limitations to permit a claim unless: '(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant

---

[1] Though neither party has raised the issue, the court notes that Massachusetts also has a Savings Statute permitting a plaintiff to commence a new action within one year of the dismissal of a timely-filed action that was dismissed due to "any matter of form." Mass. Gen. Laws c. 26, § 32. The statute applies when a claim has been brought in the wrong court or "'been defeated by some matter *not affecting the merits*.'" *Rodi v. Southern N.E. Sch. of Law*, 389 F.3d 5, 18 (1st Cir. 2004). Whether the Savings Statute applies here, where Plaintiffs brought their claims in the correct court under a state law the court later determined was inapplicable to them is an interesting question the court need not resolve, having determined equitable tolling is appropriate in this case.

relationship to the parties and the occurrence.'" *Nierman v. Hyatt Corp.*, 808 N.E.2d 290, 292 (Mass. 2004) (quoting Restatement (Second) of Conflict of Laws § 142 (Supp. 1989)). The forum state will also apply its own statute of limitations if it would bar the claim. Restatement (Second) of Conflict of Laws § 142 (Supp. 1989).

Plaintiffs contend all their claims are timely if the Massachusetts statute of limitations, and discovery rule, are applied. However, Plaintiffs' summary judgment filings in this case demonstrate the same deficits the court observed in the 2019 litigation. (19-cv-30092, M&O, Dkt. 108, 7-8.) The facts set out in Plaintiffs' 56.1 statement are silent as to when any individual plaintiff took steps to locate or identify misappropriation of her image on the internet, including by hiring professionals to assist her, and also fail to identify any specific attributes of the postings to Defendant's Facebook page that delayed discovery of many of the misappropriated images until more than three years after they were posted. As a result, with respect to the 45 images posted before July 4, 2019,[2] the court reaches the same conclusion in this case that it reached in the 2019 case: Plaintiffs have not identified sufficient facts from which a factfinder could determine the discovery rule is applicable. Consistent with the choice of law rules applied by Massachusetts, since the forum state's statute of limitations will bar the claims related to those images, the court applies that statute of limitations to those claims. *See* Restatement (Second) of Conflict of Laws § 142 (Supp. 1989).

The court also applies the Massachusetts statute of limitations to the claims based on the nine images posted between July 30, 2016 and November 21, 2018. Defendant is a Massachusetts corporation, the claims arise from social media postings aimed primarily at Massachusetts residents, and there is no other jurisdiction with a closer connection to the allegedly tortious conduct. Together,

---

[2] As the court has applied equitable tolling to the period from the filing of the complaint on July 1, 2019 through the summary judgment ruling in the 2019 case, and Plaintiffs filed their 2024 complaint three days after that summary judgment ruling, the court treats claims as facially timely if they are based on images posted after July 4, 2016.

these criteria establish that Massachusetts has a substantial interest in applying its statute of limitations to those claims. *See Nierman*, 808 N.E.2d at 293 (applying statute of limitations of jurisdiction where tortious conduct occurred, rather than jurisdiction where the plaintiffs resided).

    C.  Liability as to Timely Claims

Seven of the nine timely claims are brought pursuant to California law, one is brought by Ms. Longoria, pursuant to Arizona law, and one is brought by Ms. Pinder, a resident of the United Kingdom.[3] Plaintiffs seek summary judgment as to Defendant's liability based on an absence of factual dispute regarding the use of Plaintiffs' images, without their consent, in advertisements on Defendant's Facebook page. Defendant contends Plaintiffs are not entitled to summary judgment on the seven claims brought under California law because there are genuine disputes regarding whether Defendant "knowingly" posted the images without consent, as required under Cal. Civ. Code § 3344. Specifically, Defendant cites to the undisputed fact that the images were selected and posted by a third-party contractor, Greg Coutu, and evidence that Defendant's president and employees did not know Coutu was posting images without consent of the individuals depicted. Since only a factfinder can determine whether Defendant had knowledge that the women depicted in the posted images had not consented to the use of their images, Plaintiffs' motion for summary judgment as to liability is denied for the claims based on the seven images of California residents posted between July 30, 2016 and July 27, 2018.

The court also denies Plaintiffs' motion for summary judgment with respect to Ms. Longoria's claim. Arizona courts recognize the tort of false light invasion of privacy in situations where a party "gives publicity to a matter concerning another that places the other before the public in a false light."

---

[3] The timely claims are based on the following posts to Defendant's Facebook page: Ratchford, No. 1, September 27, 2016; Moreland, No. 2, July 2017; Lopez, No. 2, November 11, 2016; Ruiz, No. 1, October 18, 2016; Longoria, No. 1, November 10, 2016; Klaren, No. 1, July 30, 2016; Klaren, No. 2, August 14, 2017; Pinder, No. 1, November 21, 2018; and Gray, No. 1, July 27, 2018. (Def. 56.1 Statement, Dkt. No. 24.)

*Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 784 (Ariz. 1989). A defendant is only liable for the tort if the defendant's action "place[d] the plaintiff in a false light highly offensive to a reasonable person[;] . . . 'trivial indignities' are not actionable." *Id.* at 786. Whether the posting of Longoria's image was "highly offensive" is clearly a question that must be left to a factfinder.

Finally, summary judgment is denied as to Pinder's claim. Plaintiffs have not demonstrated that the undisputed facts establish a "passing off" claim under UK law or that Pinder licensed her image in the United States, such that she has a claim pursuant to *Bi-Rite Enterprises, Inc. v. Bruce Miner Co., Inc.*, 757 F.2d 440, 445 (1st Cir. 1985).

### IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (Dkt. No. 11) is DENIED; Defendant's Motion for Summary Judgment (Dkt. No. 23) is GRANTED as to the claims based on images posted to the Magic Lantern Facebook page prior to July 4, 2016 and DENIED as to all other claims; and Defendant's Motion to Conduct Discovery (Dkt. No. 32) is DENIED consistent with the parties' decisions to proceed to summary judgment prior to conducting discovery in this case.

It is So Ordered.

   /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge